# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 7, 2010

## STATE OF TENNESSEE v. TRAVIS KING

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-03574     W. Mark Ward, Judge**

---

**No. W2010-00127-CCA-R3-CD  - Filed March 1, 2011**

---

The defendant, Travis King, was convicted of aggravated robbery, a Class B felony, and sentenced as a Range I, standard offender to ten years in the Department of Correction.  On appeal, he argues that the evidence was insufficient to support his conviction.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Michael R. Working (on appeal) and Samuel Perkins (at trial), Memphis, Tennessee, for the appellant, Travis King.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lora Fowler and Paul Thomas Hoover, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

### State's Proof

The victim, Erin Melton Shea, testified that at approximately 8:45 p.m. on December 26, 2007, she was driving to her home located at 2266 Tunis Cove in Memphis.  After she turned onto Edgewood Street to go to her cove, she noticed a silver, late-model car with a blinking left-hand signal.  She turned into her cove, and the car, instead of turning left onto Edgewood Street, followed her.  Shea pulled into her driveway, and the car circled at the end

of the cove and pulled back out onto Edgewood Street. Shea then drove into her well-lit garage and reached over to the passenger's side to get her purse. As she turned to get out of the car, she noticed an African-American man, small to medium build and wearing jeans and a dark athletic top, coming into her garage. The man got between her and the car door, preventing her from getting out of the car. The man was about one foot from her, held a gun near her head, and repeatedly said, "[G]ive it to me." She gave the man her purse, and he ran toward the car that was waiting for him down the street. A neighbor heard her scream for help, and they chased the robber but could not catch him. Shea said that she was terrified and felt paralyzed and helpless during the robbery. Approximately a month later, she viewed a photographic lineup, from which she identified the defendant as the robber. She also identified the defendant in the courtroom.

Shea said that the contents of her Coach purse included a digital Kodak camera, her Samsung cellular telephone, and her Blackberry that had been furnished to her by her employer. She estimated the value of her purse at $300, the camera at $100, the cellular telephone at $50, and the Blackberry at $250. She identified her cellular telephone records, which she gave to the police, and said that the last call she made before the robbery was at 8:41 p.m. to her parents' home in Camden, Tennessee. The next call was made on December 27 at 3:48 p.m. in Memphis. She said that many phone calls were made from her phone after the robbery and that she did not recognize any of the phone numbers.

On cross-examination, Shea said that she did not know the defendant and had never seen him before the night of the robbery. She did not recall mentioning anything to the police about the robber's hair, teeth, or facial hair.

Chad Boal, the victim's neighbor, testified that he was at a neighbor's house located across the street from the victim's house when he saw the victim turn onto their cove and pull into her driveway. He noticed another car enter the cove and then exit onto Edgewood Street. After the victim had entered her garage, Boal saw a man run down the street and then heard the victim scream. Boal ran across the street and saw the man coming out of the victim's driveway and running toward Edgewood Street. Boal chased the man, but he got into a silver, four-door sedan and left.

Sergeant Frank Winston of the Memphis Police Department testified that he investigated the robbery of the victim and that the defendant was developed as a suspect after he received the victim's cell phone records. He called several of the numbers dialed after the robbery and learned that twenty-one calls were made to or received from the defendant's girlfriend, Alicia Jackson. Ten calls were made to the defendant's friend, Roderick Stigger; one call was made to Thomas Harper who lived in the defendant's apartment complex; and other calls were made to the defendant's friend, Michelle Driver. When Sergeant Winston

questioned the defendant about the victim's cell phone, the defendant reported that he purchased it on December 28 "from a junkie off the street." However, the phone records showed that the first call to the defendant's girlfriend was placed on December 27.

Sergeant Winston said that the victim described the robber as a "[s]kinny" African-American male between 5'8" and 5'10" with a medium complexion. The victim did not mention anything about the robber's teeth, ears, hair, or eyes. Sergeant Winston subsequently showed the victim a photographic lineup, from which she positively identified the defendant as the man who robbed her.

**Defense Proof**

Barbara Wadlington, the defendant's mother, testified that he was born with a birth defect in that one leg was shorter than the other. The defendant was placed in leg braces at age three or four but did not wear them long. Wadlington explained that she was told the defendant would never walk, which she refused to accept, so she removed the braces. She said the defendant played with his siblings but could not keep up with them. During high school, the defendant suffered a chipped a tooth which was never repaired. Wadlington said that during the Christmas holiday before the defendant was arrested, the defendant and his brother got into a fight and the defendant suffered "a real bad black eye, blood shot." She also said that the defendant cannot speak clearly and runs "differently." Wadlington acknowledged that she did not know the defendant's whereabouts at the time of the robbery.

The twenty-eight-year-old defendant testified that he did not rob the victim but admitted that he had her cell phone, saying that he bought it from an "unknown male" on Park Avenue on the night of December 26. He said that he used the phone the next day and acknowledged that he made numerous calls and sent text messages on the phone. The defendant said that he cannot run very well and "trip[s] over [himself] every now and then." He said he and his brother got into a fight on December 20, 2007, during which he suffered a black eye. His black eye started healing about December 25 but was still noticeable because it was swollen. He said that he sustained a chipped tooth when he was "sucker punched" in high school and that the tooth was never repaired.

On cross-examination, the defendant said he graduated from high school in 2000 and had had two restaurant jobs since then. He acknowledged that he was not working in December 2007, explaining that he was helping his mother take care of his grandmother at the time. Asked how he supported himself and his children, the defendant said he was paid $30 to $40 a week by his mother and aunt. He said that he had received disability benefits until 2004 when he had the benefits discontinued because he "didn't feel like [he] needed it any more [and] was ashamed of being [on] disability." He said that the phone he bought on

December 26 was a blue AT&T phone, for which he paid $15. The defendant said that he lost the phone on December 29 at the basketball goal by Melrose High School when he laid the phone "to the side to shoot the ball because [he could not] play with the phone in [his] hand."

On redirect examination, the defendant said that he was five feet, six and one-half inches tall.

## ANALYSIS

### Sufficiency of the Evidence

The defendant argues that the evidence was insufficient to support his conviction for aggravated robbery, saying that "no reliable evidence supports the conviction in conjunction with possession of items recently stolen in a robbery of [the victim]." The State argues that the evidence was sufficient, and we agree.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

-4-

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear when "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1) (2010).

The defendant points out that the victim did not notice his chipped tooth or black eye and that his height did not match the description the victim gave of the robber. The victim identified the defendant from a photographic lineup approximately one month after the robbery and again in the courtroom at trial as the man who robbed her at gunpoint in her well-lit garage. A victim's identification of a defendant as the perpetrator of an offense is, alone, sufficient to establish identity. See State v. Hill, 987 S.W.2d 867, 870 (Tenn. Crim. App. 1998); State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Additionally, the defendant had the victim's cellular telephone in his possession and admitted making numerous phone calls to his girlfriend and friends, as well as sending text messages on the phone. We conclude, therefore, that the evidence was sufficient to sustain the defendant's conviction.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE